2023 IL App (1st) 191321-U

SIXTH DIVISION
August 4, 2023

No. 1-19-1321

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 60076 |
| | ) | |
| RONALD POWELL, | ) | Honorable |
| | ) | James M. Obbish, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices C.A. Walker and Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's convictions for attempted first degree murder, home invasion, and being an armed habitual criminal. Defendant has not established plain error regarding an allegedly improper comment during the State's rebuttal closing argument. However, we reduce the sentences imposed.

¶ 2    Following a jury trial, defendant Ronald Powell was found guilty of attempted murder while armed with a firearm (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2016)), home invasion while armed with a firearm (720 ILCS 5/19-6(a)(3) (West 2016)), and being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2016)). The court sentenced him to concurrent terms of 30, 25, and 20 years in prison, respectively.

¶ 3     On appeal, Mr. Powell argues that the State committed prosecutorial misconduct during rebuttal closing argument by referencing a prior consistent statement by the complaining witness. He further argues his sentences are excessive given the nature of his offenses; his criminal history, family ties, and employment; and the trial court's improper speculation about the nature of two of his prior convictions and his motivation for committing the instant offenses. We affirm his conviction but reduce the sentences imposed.

¶ 4                                    I. BACKGROUND

¶ 5     Mr. Powell was charged by indictment with nine counts based on an incident that occurred on March 25, 2017, when he was alleged to have entered William Hawkins's home, put a loaded firearm to Mr. Hawkins's head, and pulled the trigger. Mr. Powell rejected the State's offer that he plead guilty to attempted murder in exchange for 13 years in prison, with the dismissal of all other counts. The State then proceeded to a jury trial on counts of attempted murder while armed with a firearm, home invasion while armed with a firearm, and AHC.

¶ 6     Before trial, the State filed a motion to admit Mr. Hawkins's prior consistent statements. During the incident, Mr. Hawkins activated his "Life Alert" monitoring system and spoke to the operator. The State wanted to admit these statements as excited utterances. Following a hearing, the court ruled the State could introduce the fact that Mr. Hawkins spoke to the Life Alert operator but not the content of Mr. Hawkins's statements.

¶ 7                                    A. Trial

¶ 8     During the April 2019 trial, Mr. Hawkins testified he was 65 years old. In March 2017, he lived in an apartment on the 1500 block of West 63rd Street in Chicago. As Mr. Hawkins was physically disabled, neighbors would go to the store for him, including a woman he knew as "Fat

Fat," who was dating or married to Mr. Powell. One day in March 2017, Mr. Powell inquired about Mr. Hawkins's relationship with Fat Fat. Mr. Hawkins explained she just went to the store for him, and Mr. Powell stated he did not want Mr. Hawkins around her.

¶ 9 About a week later, on March 25, 2017, Mr. Hawkins, who had been drinking alcohol, called a neighbor named Raymond and asked Raymond to go to the store for him. Raymond came to Mr. Hawkins's apartment and Mr. Hawkins gave him money and asked him to buy a "fifth of liquor." Raymond left and Mr. Hawkins closed and locked his door. About 20 minutes later, Mr. Hawkins's doorbell rang. Thinking it was Raymond, Mr. Hawkins unlocked the door without looking through the peephole. Before Mr. Hawkins had opened the door, Mr. Powell pushed it open and entered the apartment. Mr. Hawkins saw Raymond run down the hall.

¶ 10 Mr. Hawkins testified that Mr. Powell held a pistol and, shouting, asked where his wife was. Mr. Hawkins told Mr. Powell that she was not there. Mr. Powell grabbed Mr. Hawkins, put the pistol to Mr. Hawkins's temple, and "clicked it." Mr. Hawkins thought the "click" was Mr. Powell pulling the trigger. About a second later, Mr. Hawkins heard another click. The gun did not discharge. Mr. Hawkins began wrestling with Mr. Powell for the pistol. They fell, and the pistol fell from Mr. Powell's hand. After a struggle between the two men, Mr. Hawkins grabbed the firearm and rose. He instructed Mr. Powell to sit on his couch. With the pistol pointed at Mr. Powell in one hand, Mr. Hawkins tried to dial 911 on his cell phone with his other. He could not complete the call as he was shaking. However, he had a Life Alert box in his bedroom and pressed a button on the box to call 911.

¶ 11 The Life Alert box connected Mr. Hawkins to an operator. The State asked what happened when the operator answered, and Mr. Hawkins began to say he told her that "someone had—," but the court sustained defense counsel's objection. Mr. Hawkins testified that he told the operator

something was happening in his apartment, to send the police, and began, "I asked would she send out—," but the court sustained another objection from defense counsel.

¶ 12    Three to five minutes after the call, the police arrived. Mr. Hawkins remained in the bedroom doorway with the pistol pointed at Mr. Powell. He pointed the barrel down and handed it to an officer. According to Mr. Hawkins, the officers walked straight to Mr. Powell and handcuffed him "because of what they heard over the [Life Alert]." Mr. Hawkins denied that the officers also handcuffed him. After removing Mr. Powell from Mr. Hawkins's apartment, the officers took Mr. Hawkins to the police station, where he spoke with them. The following day, Mr. Hawkins returned to the police station and spoke with officers and an assistant State's attorney. At trial, he identified a firearm which he "guess[ed]" was the one Mr. Powell had and "look[ed] like the gun that he might have."

¶ 13    On cross-examination, Mr. Hawkins testified that he began his day on March 25, 2017, as he "usually" did, meaning he ate and "finished drinking whatever liquor [he] had." That day he drank tequila. Defense counsel asked how much he drank that morning. Mr. Hawkins responded he had probably purchased a fifth of tequila, which might take him 24 hours to drink. He called Raymond around 1 p.m. Mr. Hawkins did not see Mr. Powell pull the trigger of his firearm but knew Mr. Powell did so as he heard the trigger "click" twice. Mr. Hawkins never ran away or called for help. On redirect examination, he denied that, at the time of the incident, he was under the influence of the alcohol he had drunk that day.

¶ 14    Chicago police officer Eric Huml testified that, at approximately 6:45 p.m. on March 25, 2017, he and his partner received a call for service at Mr. Hawkins's address concerning a person with a firearm and "some kind of threat or struggle." Officer Huml was the first officer to enter the apartment and observed Mr. Powell on a couch with his hands on his knees. Mr. Hawkins stood

a few yards away with a firearm pointed downwards. To secure the scene, Officer Huml took the firearm and handed it to his partner, then handcuffed Mr. Hawkins. Mr. Powell was also handcuffed. Officer Huml spoke with Mr. Hawkins then removed his handcuffs. Mr. Powell was then "formally" arrested. Officer Huml identified the firearm at trial. It was a revolver that could hold six rounds and contained five shell casings. Three of the casings were "live" and two were "expelled," meaning they had been fired before.

¶ 15   On cross-examination, Officer Huml testified that Mr. Hawkins and Mr. Powell were both initially detained as the officers were not yet sure what had happened. Officer Huml spoke with Mr. Hawkins and then with other officers who had spoken with Mr. Powell, and determined Mr. Hawkins was the victim.

¶ 16   A Chicago police detective testified he was a former police evidence technician in the Latent Print Development and Recovery Section. He examined the firearm and casings for fingerprints but did not detect any. An Illinois State Police forensic scientist testified she examined the firearm and found it operable. The State entered stipulations that Mr. Powell was not a peace officer and had been convicted of two qualifying offenses for AHC.

¶ 17   The defense rested without presenting evidence. Before closing arguments, the court instructed the jury that the attorneys' statements during argument were not evidence and should not be considered by the jury as evidence. The court also said that the argument should be confined to the evidence and reasonable inferences therefrom.

¶ 18   During argument, defense counsel compared the State's case to a "story" in which Mr. Hawkins and the other witnesses were characters. Defense counsel noted that Mr. Hawkins began each day drinking liquor and could not positively identify the firearm. He did not call for help or flee. The police discovered Mr. Hawkins holding the firearm, and Mr. Powell's fingerprints were

absent from the firearm. The firearm was operable but fired no bullets, indicating that no one pulled the trigger.

¶ 19    In rebuttal, the State argued the jury should find Mr. Hawkins was credible given his demeanor and "consistent recitation of the events." Further, he was not impeached or contradicted. Rather:

"A lot of the evidence corroborated [Mr. Hawkins's] version. They want you to discredit that with a flip of treating it like it's a theater production. That's not the case here.

And one of the things in this whole, this is some big plot or some big story line, what's the biggest essential element in any plot, a good conflict, a good reason why.

And the one explanation they have not been able to give you one way or another is why would William Hawkins come in here, two years later and stick to this same thing that he's been saying since day one. They didn't give you any explanation to that."

¶ 20    Defense counsel objected and the court overruled the objection. The State continued that there was no such explanation because "the common explanation is what William Hawkins told you about the mistaken relationship between him and his neighbor."

¶ 21    Following argument, the court again orally instructed the jury that closing arguments should be confined to the evidence and to reasonable inferences to be drawn therefrom. The court further instructed that closing arguments were not evidence and any statements or argument which were not based on the evidence should be disregarded. The court issued a written instruction providing the same explanations.

¶ 22    During deliberations, the jury requested a transcript of Mr. Hawkins's testimony. The parties agreed that the court should respond that no transcript was available, and the jury should continue to deliberate. Later, the jury sent a note asking (1) what time Raymond went to get Mr.

Hawkins liquor, (2) what time Raymond returned, and (3) "[w]hat time did Mr. Powell come to the door." The parties agreed to respond that the jury had received all the evidence and instructions and should continue to deliberate. The jury found Mr. Powell guilty of attempted murder while armed with a firearm, home invasion while armed with a firearm, and AHC.

¶ 23     Mr. Powell filed a motion for a new trial. The motion included an argument that the State made "prejudicial, inflammatory and erroneous statements in closing argument designed to arouse the prejudices and passions of the jury, thereby prejudicing [his] right to a fair trial." At the hearing on the motion, counsel rested on the motion for that argument. The court denied the motion.

¶ 24                                    B. Sentencing

¶ 25     The court proceeded directly to sentencing. Mr. Powell's presentence investigation report (PSI) showed that, on the date of the offense, he was 44 years old. His family was concerned but supportive of his situation. He dropped out of high school but earned his GED. He was employed in the same job from 2015 to 2017. He was married and had a daughter from a prior relationship. He had a positive relationship with his daughter and daughter's mother. He had been diagnosed with schizophrenia and Crohn's disease. He never used drugs and had no problem abstaining from alcohol. He had been in a gang but left 10 years prior.

¶ 26     The PSI showed Mr. Powell had prior convictions for: possession of a controlled substance in 1990 (sentenced to one year in the Illinois Department of Corrections (IDOC) for violating probation); robbery in 1991 (probation terminated satisfactorily); possession of a controlled substance in 1993 (4 years in the IDOC); manufacture or delivery of cocaine in 1997 (6 years in the IDOC); receiving, possessing, or selling a stolen vehicle in 2003 (6 years in the IDOC); unlawful possession of a weapon by a felon in 2005 (2 years in the IDOC); "Domestic Battery-Physical Contact" in 2009 (probation terminated unsatisfactorily); "Domestic Battery-Physical"

and criminal damage to property in 2010 (275 days in the Cook County Department of Corrections); and multiple counts each of harassing a juror or witness, communicating with a witness, intimidation, and "Violate Order/Prior Dom-B" in 2010 (7 years in the IDOC). After his conviction in 2010, the only offenses on Mr. Powell's record were a ticket for driving on a suspended or revoked license on October 24, 2013, a ticket for operating an uninsured vehicle in 2014, and another ticket for driving on a suspended license in July of 2015.

¶ 27    At sentencing, the State advised the court that it had sent a cab for Mr. Hawkins to attend but that "he did not wish to come via cab." The State argued in aggravation that Mr. Powell had a lengthy criminal history and had not been deterred by prior punishments, where he was "barely *** out of custody long enough" before committing another crime. His offenses threatened serious harm as he had held a firearm to Mr. Hawkins's head and pulled the trigger and, when the firearm failed to go off, pulled the trigger again. Mr. Hawkins was over 60 years old, which could support an extended term and be used in aggravation, and Mr. Powell was subject to 15-year firearm enhancements on his attempted murder and home invasion counts, making the sentencing range for those offenses 21 to 75 years in prison. The sentencing range for Mr. Powell's AHC offense was 6 to 30 years in prison. The State requested a sentence above the minimum.

¶ 28    In mitigation, defense counsel highlighted Mr. Powell's age, his marriage since 2016, his positive relationship with his daughter, and his strong family support. Counsel noted that Mr. Powell's family members appeared during trial and at sentencing, and that Mr. Powell, who had been diagnosed with Crohn's disease and schizophrenia, had been residing in a residential treatment unit while in jail. Counsel pointed out that Mr. Powell had an education, received his GED, and, prior to his arrest, worked to support his family. Counsel argued Mr. Powell's criminal background did not include "significant violent felonies" and he had not been convicted of a crime

since 2010. While Mr. Powell had committed a serious offense, Mr. Hawkins was not severely injured. The defense requested a minimum 21-year sentence and concurrent sentences. Mr. Powell declined to speak in allocution.

¶ 29    The court stated it had read the PSI and heard the additional information in defense counsel's argument. The court recited Mr. Powell's criminal background, finding it a "significant factor" in aggravation that Mr. Powell was 47 years old and had been violating the law since around age 18. The court found it "somewhat significant" that he had twice violated the terms of his probation. The court also found it significant that Mr. Powell had misdemeanor convictions for domestic battery, which were "crimes of violence regarding a domestic partner" and which the court believed were "somewhat indicative" of his character. The court noted that those convictions showed Mr. Powell's "inability to control his temper, much like his behavior here regarding the complaining witness where he feels somehow he has been offended in some way and so he is going to act out."

¶ 30    The court pointed out that Mr. Powell did not see his wife with Mr. Hawkins. Rather, he affirmatively "barge[d]" into Mr. Hawkins's apartment and tried to end Mr. Hawkins's life. Mr. Powell "acted out in a way here that's so inappropriate and so dangerous, such a threat to society," and his actions were "extraordinarily aggravating." Mr. Powell was a convicted felon "multiple times" over and was not allowed any contact with a firearm, "yet he arm[ed] himself with one, showing his disrespect for the law." The court noted Mr. Hawkins was 65 years old and "miraculously" survived, and remarked, "[y]ou don't get to kill somebody just because they are old. You don't get to kill somebody just because they happen to be an alcoholic." Rather, Mr. Hawkins "shouldn't have been somehow denigrated and made to be a lesser citizen" because he used his limited means to buy alcohol. The court noted that, had the gun discharged and killed Mr.

Hawkins, the minimum sentence would be 45 years in prison.

¶ 31    As to mitigating factors, the court noted that Mr. Powell earned a GED, was employed and married, had a child, had left a gang, and did not have substance abuse issues. Some of his convictions were drug-related and therefore not "particularly aggravating" as they did not involve violence.

¶ 32    The court sentenced Mr. Powell to 30 years in prison for attempted murder and concurrent terms of 25 years for home invasion and 20 years for AHC. The court noted that the sentence for attempted murder included the 15-year firearm enhancement but did not mention an enhancement regarding the home invasion sentence. The enhancement is mandatory (720 ILCS 5/19-6(a)(3), (c) (West 2016)), so we presume it was imposed as part of the 25 year sentence for home invasion. Mr. Powell filed a motion to reconsider his sentence, arguing that the court imposed excessive sentences given his background and the nature of the offenses, improperly considered matters implicit in the offenses as aggravating, and penalized him for exercising his right to trial. Counsel presented no argument, and the court denied the motion.

¶ 33                              II. JURISDICTION

¶ 34    Mr. Powell's motion to reconsider his sentence was denied on May 31, 2019, and Mr. Powell timely filed his notice of appeal on that same day. We have jurisdiction over this appeal under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb 6, 2013) and 606 (eff. July 1, 2017), governing appeals from final judgments in criminal cases.

¶ 35                              III. ANALYSIS

¶ 36                         A. Prosecutorial Misconduct

¶ 37    On appeal, Mr. Powell first argues that the State committed prosecutorial misconduct in

rebuttal closing argument by asking the jury why, if Mr. Hawkins was telling a story, he would "come in here, two years later and stick to this same thing that he's been saying since day one." Mr. Powell contends the prosecutor was impermissibly arguing that Mr. Hawkins was credible because he had given a prior consistent statement.

¶ 38    The State argues Mr. Powell has forfeited the issue by failing to include it in his motion for a new trial. Mr. Powell counters that he preserved the issue by challenging the State's closing argument in that motion. Alternatively, he argues we should review it under either prong of the plain-error doctrine (*People v. Coats*, 2018 IL 121926, ¶ 9) or on the basis that forfeiture is a limitation on the parties and not on the court (*People v. De La Paz*, 204 Ill. 2d 426, 432-33 (2003)).

¶ 39    To preserve an issue for review, a party must contemporaneously object and raise the issue in a posttrial motion. *People v. Sebby*, 2017 IL 119445, ¶ 48. The posttrial motion must alert the court to the alleged error with sufficient specificity so that the court has a reasonable opportunity to correct it. *People v. Coleman*, 391 Ill. App. 3d 963, 971 (2009).

¶ 40    In this case, counsel contemporaneously objected to the exact portion of closing argument that Mr. Powell is raising as an issue on appeal. In Mr. Powell's motion for a new trial, however, he claimed more generally that the prosecutor made "prejudicial, inflammatory, and erroneous statements designed to arouse the jury's prejudices and passions, and thereby prejudiced Mr. Powell's right to a fair trial." The State argues that the motion objection was too generic to preserve the issue on appeal. Mr. Powell argues that he had repeatedly objected to the State relying on Mr. Hawkins's statements to the operator through the Life Alert to bolster Mr. Hawkins's credibility and thus this issue was clearly before the court. However, the State is correct that, to avoid forfeiture of this issue, a defendant must inform the court in their motion for a new trial what part of the closing argument was so prejudicial that a new trial is warranted. *People v. Morgan*, 142 Ill.

2d 410, 455 (1991), *rev'd on other grounds sub nom. Morgan v. Illinois*, 504 U.S. 719 (1992).

¶ 41    Moreover, even if Mr. Powell's objections to the closing argument were sufficient to properly preserve the issue, in our view the argument was not so prejudicial as to deprive Mr. Powell of a fair trial.

¶ 42    Closing arguments are intended to allow the parties a final opportunity before the jury to review the evidence, explain the law, and "assert why the evidence and law compel a favorable verdict." *Williams*, 2022 IL 126918, ¶ 40. To find that a prosecutor's comment in closing argument is reversible error, a reviewing court must determine that, first, the comment was improper and, second, the comment was "so prejudicial that real justice was denied or the verdict resulted from the error." *Id.* ¶ 41. If the comment "fails to meet either description, it is not reversible error." *Id.* ¶ 49.

¶ 43    The parties disagree about the appropriate standard of review. Mr. Powell urges us to follow those cases applying *de novo* review. See, *e.g.*, *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007) ("Whether statements made by a prosecutor at closing argument were so egregious that they warrant a new trial is a legal issue this court reviews *de novo*."). The State, on the other hand, maintains that an abuse of discretion standard applies. See *People v. Blue*, 189 Ill. 2d 99, 128 (2000) ("The regulation of the substance and style of the closing argument is within the trial court's discretion, and the trial court's determination of the propriety of the remarks will not be disturbed absent a clear abuse of discretion." (Internal quotation marks omitted.)). We need not decide which standard applies because, even if we do not afford the trial court discretion on this issue, we find that the State's comments did not rise to the level of reversible error.

¶ 44    A party generally cannot bolster a witness's testimony by introducing a pretrial statement

by the witness that is consistent with their trial testimony, as "[p]eople tend to believe that which is repeated most often, regardless of its intrinsic merit, and repetition lends credibility to testimony that it might not otherwise deserve." (Internal quotation marks omitted.) *People v. Johnson*, 2012 IL App (1st) 091730, ¶ 60; see also Ill. R. Evid. 613(c) (eff. Oct. 15, 2015). This was the basis for Mr. Powell's objection, and it was well founded—it was improper for the prosecutor to suggest that there had been evidence of Mr. Hawkins making consistent statements since those statements were not allowed into evidence. However, the court's failure to sustain the objection to this argument was not reversible error.

¶ 45   The most that can be said about this argument is that it implied there was evidence that was never presented. It is therefore quite different from the cases Mr. Powell cites in support of his argument, where questions were asked during the evidentiary phase of the trial that elicited improper testimony designed to bolster a witness's credibility. See, *e.g.*, *People v. Henderson*, 142 Ill. 2d 258, 309-10 (1990) (prosecutor erred in asking a question formulated to elicit testimony that the witness had made a prior consistent statement, and the trial court erred in admitting the testimony).

¶ 46   Here, before closing arguments, the court instructed the jury that closing arguments were not evidence. After closing arguments, the court repeated that admonition and added that the jury should disregard any statement by the attorneys that was not based on the evidence. The court also provided those points in a written instruction. Thus, to the extent that the jury might have understood the prosecutor's remarks as a reference to some earlier statement by Mr. Hawkins that was consistent with his trial testimony, it was told to disregard that portion of the argument as no prior consistent statement was in evidence. *Boston*, 2018 IL App (1st) 140369, ¶ 103; see also *People v. Sangster*, 2014 IL App (1st) 113457, ¶ 126 (no reversible error where the prosecutor

referenced the witness's prior consistent statements in closing argument but did not discuss substance of prior statements, and any error was cured by the jury instruction that closing arguments were not evidence).

¶ 47    Moreover, the transcript of the prosecutor's rebuttal argument spans over 10 pages, and the complained-of portion consists of only several sentences. This short improper reference must be viewed in the context of the entire argument. With that perspective, it is clear that this remark did not deprive Mr. Powell of a fair trial. See *Jackson*, 2020 IL 124112, ¶¶ 87-88 (prosecutor's "brief and isolated" mischaracterizations of evidence within "lengthy" argument were not reversible error); *People v. Williams*, 2022 IL App (2d) 200455, ¶ 130 (improper comments in closing argument were not reversible error where they constituted 11 sentences of 60 pages of argument and court advised jury that closing arguments were not evidence and they should disregard statements not based on evidence).

¶ 48    Accordingly, we cannot say that the prosecutor's improper suggestion in rebuttal that Mr. Hawkins was credible because he had previously said the "same thing" was reversible error, as it was not so prejudicial that real justice was denied; nor is there support for a claim that the jury's verdict resulted from the error. *Williams*, 2022 IL 126918, ¶¶ 41, 49 (to be reversible error, a comment in closing argument must be improper and so prejudicial "that real justice was denied or the verdict resulted from the error").

¶ 49                               B. Sentencing

¶ 50    Next, Mr. Powell argues his sentences are excessive. He contends that, at sentencing, the court improperly speculated that his misdemeanor domestic battery convictions were violent and involved an inability to control his temper similar to the instant offenses, and erroneously suggested that Mr. Powell targeted Mr. Hawkins because Mr. Hawkins was old and an alcoholic.

He argues the court failed to adequately weigh the mitigating evidence, including his education, employment, and family support. He notes he caused no physical harm to Mr. Hawkins and did not attempt to flee after Mr. Hawkins contacted the police. He further notes that, prior to trial, the State offered Mr. Powell a 13-year sentence in exchange for his guilty plea to attempted murder. He requests we remand for resentencing or reduce his sentences to their respective minimums.

¶ 51     The Illinois Constitution requires sentencing courts to consider both the seriousness of the offense and the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11. We will not disturb a sentence unless the trial court abused its discretion (*People v. Alexander*, 239 Ill. 2d 205, 212 (2010)), and we will not substitute our judgment for that of the trial court merely because we may have weighed the aggravating and mitigating factors differently (*id.* at 213).

¶ 52     Where a sentence is within the statutory range, it is not excessive unless it greatly varies with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Fern*, 189 Ill. 2d 48, 54 (1999). We generally defer to the trial court's judgment as the trial court has observed the defendant and the proceedings and therefore has a better opportunity to consider the sentencing factors. *Alexander*, 239 Ill. 2d at 212-13. The presence of mitigating factors does not necessarily warrant a minimum sentence (*People v. Peoples*, 2015 IL App (1st) 121717, ¶ 112), and "[t]he seriousness of the crime is the most important factor in determining an appropriate sentence" (*People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002)).

¶ 53     Mr. Powell was found guilty of attempted first degree murder while armed with a firearm (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2016)), home invasion while armed with a firearm (720 ILCS 5/19-6(a)(3) (West 2016)), and AHC (720 ILCS 5/24-1.7(a) (West 2016)). AHC is a Class X felony with a sentencing range of 6 to 30 years in prison. 720 ILCS 5/24-1.7(b) (West 2016); 730 ILCS

5/5-4.5-25(a) (West 2016). Attempted murder and home invasion committed while armed with a firearm are Class X felonies subject to a mandatory 15-year enhancement, for a sentencing range of 21 to 45 years in prison. 720 ILCS 5/8-4(c)(1)(B), 19-6(a)(3), (c) (West 2016). In addition to the 15-year enhancement, Mr. Powell was also eligible for a discretionary extended-term sentence of 30 years to 60 years for those two offenses as Mr. Hawkins was over the age of 60. 730 ILCS 5/5-5-3.2(b)(3)(ii), 5-4.5-25(a), 5-8-2(a) (West 2016). Accordingly, the sentencing ranges for Mr. Powell's attempted murder and home invasion offenses were 21 to 75 years in prison.

¶ 54   The court sentenced Mr. Powell to 30 years for attempted murder, 25 years for home invasion, and 20 years for AHC, with all sentences running concurrently. The sentences are therefore within the statutory limits and, as a whole, at the lower end of what Mr. Powell might have received. We must presume these sentences are proper unless Mr. Powell affirmatively shows otherwise. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 55   The State argues that Mr. Powell forfeited some of his sentencing arguments by not raising these precise arguments in his motion to reconsider his sentence. We reject the State's forfeiture argument on Mr. Powell's sentencing claim. Parties forfeit claims, not arguments. *Brunton v. Kruger*, 2015 IL 117663, ¶ 76. Mr. Powell filed a post-sentencing motion in which he argued that his sentence was excessive and that the trial court considered impermissible aggravating factors and failed to consider required mitigating factors. The claims he makes here were the claims he made in that motion.

¶ 56   We agree with Mr. Powell that this lengthy sentence greatly varies with the spirit and purpose of the law and is manifestly disproportionate to the nature of the offense.  No one was injured in this offense, and Mr. Powell's criminal background was largely non-violent. Indeed, although Mr. Powell had a lengthy criminal history, after his conviction in 2010, he had no

additional criminal convictions. From his release in 2013 until he was arrested in this case in 2017, he had only traffic tickets. In this same time period, leading up to the incident that led to his arrest in this case, he got married and held a steady job with a single employer for approximately two years.

¶ 57    The trial court noted that Mr. Powell was 47 years old, but the court did not mention Mr. Powell's Crohn's disease or schizophrenia. The court found it mitigating that he was employed but did not focus on the fact that despite a lengthy criminal record, Mr. Powell was able to obtain and keep a job for two years, apparently up until the time he was arrested and incarcerated in this case. The court was bound, of course, by the jury's finding that Mr. Powell was guilty, but the ballistic evidence was undisputed that no shots were actually fired from the gun.

¶ 58    The minimum sentence in this case is 21 years. The sentence that the court imposed was 30 years. Because Mr. Powell is middle-aged and in poor health, this nine year difference may well spell the difference between dying in prison and having a reasonable chance of release. Nothing about this crime or this defendant suggests to us that he should die in jail. While the trial court clearly took care to consider both sides' presentations at sentencing, imposing this sentence was, in our view, an abuse of discretion.

¶ 59    As our supreme court has made clear, under Supreme Court Rules 615(b)(1) and (b)(4) (eff. Jan. 1, 1967), we have the power to reduce a defendant's sentence on appeal once it has been determined that the sentence imposed was an abuse of discretion. *People v. Jones*, 168 Ill. 2d 367, 378 (1995). The court has cautioned us to use this power sparingly and suggested that it be used, for example, where the evidence at the original sentencing was "relatively straightforward and uncomplicated." *Id.* That was true in this case and we exercise our power under Rule 615(b)(4) here and reduce this sentence to 21 years on the attempted murder and home invasion charges and

- 17 -

six years on the AHC charge, with all sentences to run concurrently.

¶ 60                                    IV. CONCLUSION

¶ 61    In conclusion, Mr. Powell has failed to establish that the State committed reversible error during rebuttal closing argument. However, we agree with Mr. Powell that the trial court abused its discretion at sentencing, and we exercise the power given to the appellate court under Supreme Court Rule 615(b)(4) to sentence Mr. Powell to 21 years on the attempted murder and home invasion charges and six years on the AHC charge, with all sentences to run concurrently.

¶ 62    Affirmed as modified.